**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 4 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS
### TENTH CIRCUIT

---

PENELOPE C. MURRELL, on her own behalf and as mother and guardian ad litem of Penelope C. Jones; and PENELOPE C. JONES,

     Plaintiffs-Appellants,

v.

SCHOOL DISTRICT NO. 1, DENVER, COLORADO, also known as Denver Public Schools; SCHOOL DISTRICT NO. 1, BOARD OF EDUCATION, also known as Denver Public Schools Board of Education; VIVIAN JOHNSTON, individually and in her capacity as Principal of George Washington High School; KATHLEEN BRADY, individually and in her capacity as Teacher; NELIA HICKS, individually and in her capacity as Teacher; IRV MOSKOWITZ, in his capacity as the Superintendent of Denver Public Schools,

     Defendants-Appellees,

---

NOW LEGAL DEFENSE AND EDUCATION FUND; ACLU WOMEN'S RIGHTS PROJECT; CONNECTICUT WOMEN'S EDUCATION AND LEGAL DEFENSE FUND; EQUAL RIGHTS ADVOCATES; NATIONAL WOMEN'S LAW CENTER; NORTHWEST WOMEN'S LAW CENTER; TEXAS CIVIL RIGHTS PROJECT; TITLE IX ADVOCACY PROJECT; WOMEN'S LEGAL DEFENSE FUND; NATIONAL ASSOCIATION OF SCHOOL PSYCHOLOGISTS; NATIONAL ASSOCIATION OF SCHOOL WORKERS; LAMBDA

No. 97-1055

LEGAL DEFENSE AND EDUCATION FUND, INC.;
UNITED STATES OF AMERICA,

    Amici Curiae.

_____

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 95-Z-2882)

_____

David C. Feola of King Clexton & Feola, LLC, Denver, Colorado (Alan K. Molk of Lapuyade, Washington & Molk, L.L.C., Denver, Colorado, with him on the briefs), for Plaintiffs-Appellants.

Yolanda S. Wu (Martha F. Davis and Julie Goldscheid with her on the brief) of NOW Legal Defense and Education Fund, New York, New York, for Amici Curiae NOW Legal Defense and Education Fund, ACLU Women's Rights Project, Connecticut Women's Education and Legal Defense Fund, Equal Rights Advocates, National Women's Law Center, Northwest Women's Law Center, Texas Civil Rights Project, Title IX Advocacy Project, Women's Legal Defense Fund on behalf of Plaintiffs-Appellants.

Patrick B. Mooney (Martin Semple with him on the brief) of Semple & Mooney, P.C., Denver, Colorado, for Defendants-Appellees.

Isabelle Katz Pinzler, Acting Assistant Attorney General; and Dennis J. Dimsey and Seth M. Galanter, Attorneys, Department of Justice, Washington, DC, filed a brief for Amicus Curiae United States of America.

Beatrice Dohrn, Legal Director; and David S. Buckel and Ruth E. Harlow of Lambda Legal Defense Fund, Inc., New York, New York, filed a brief for Amici Curiae National Association of School Psychologists, National Association of Social Workers, and Lambda Legal Defense and Education Fund, Inc.

_____

Before **SEYMOUR**, Chief Judge, **ANDERSON** and **LUCERO**, Circuit Judges.

**SEYMOUR**, Chief Judge.

Penelope C. Murrell brought this action on her own behalf and as *guardian ad litem* for her daughter, Penelope C. Jones, against School District Number 1, Denver, Colorado (the School District). In her complaint, Ms. Murrell asserted that the School District violated Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, based on the School District's alleged knowledge of and failure to remedy sustained sexual harassment, assault, and battery of Ms. Jones, a developmentally and physically disabled student at George Washington High School (GWHS), by one of her fellow students. Ms. Murrell also asserted two claims under 42 U.S.C. § 1983 against the School District, and individually against the principal of GWHS and two of Ms. Jones' teachers. In her first constitutional claim, Ms. Murrell alleged that the School District, principal and teachers violated the Equal Protection Clause of the Fourteenth Amendment by failing to remedy Mr. Doe's sexual harassment of Ms. Jones. In her second claim, Ms. Murrell alleged the School District, principal and teachers violated the Due Process Clause of the Fourteenth Amendment by failing to protect Ms. Jones from Mr. Doe.[1]

---

[1]Ms. Murrell also advanced claims under the Americans with Disabilities
(continued...)

The district court dismissed the action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted. The court held that Title IX provides no cause of action for a school's failure to prevent and remedy student-on-student sexual harassment, and that the School District had no constitutional duty to protect Ms. Jones from assaults by a fellow student.[2] Ms. Murrell and Ms. Jones appeal the district court's order with respect to her Title IX and equal protection claims. For the reasons stated below, we reverse in part and affirm in part.

## I.

In reviewing the grant of a motion to dismiss, we are bound to construe as true the facts presented in the plaintiff's complaint. *See Seamons v. Snow*, 84 F.3d 1226, 1231-32 (10th Cir. 1996). Thus construed, the complaint presents the following series of events.

Penelope Jones began attending classes at GWHS on or about October 25, 1993. Ms. Jones was born with spastic cerebral palsy, which severely impairs her

---

[1](...continued) Act, 42 U.S.C. §§ 12101, *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Following entry of the district court's order dismissing the action, the parties stipulated to the dismissal with prejudice of these claims.

[2]In dismissing Ms. Murrell's section 1983 claims, the district court made direct reference only to her due process claim and gave no reasons for its dismissal of her equal protection claims.

ability to use and control the right side of her body. She is also deaf in her left ear. Testing conducted by the School District established that Ms. Jones was also developmentally disabled. According to an Educational Assessment performed in December 1993, Ms. Jones functioned intellectually and developmentally at the level of a first-grader.

Upon enrolling Ms. Jones at GWHS, Ms. Murrell informed the principal of GWHS, Vivian Johnston, and special education teachers Kathleen Brady and Nelia Hicks, that Ms. Jones had been sexually assaulted at her previous school. Ms. Murrell expressed her fear that her daughter's mental and physical disabilities would place her at continued risk. Ms. Murrell asserts that the principal and the teachers assured her Ms. Jones would be properly supervised. The complaint also alleges that these officials had a duty to supervise and ensure the safety of all GWHS students.

GWHS assigned Ms. Jones to the special education program taught by teachers Brady and Hicks. There Ms. Jones encountered another special education student, "John Doe," who was known to have significant disciplinary and behavioral problems which included engaging in sexually inappropriate conduct. According to the allegations in the complaint, the School District was well aware of Mr. Doe's history. Indeed, Mr. Doe's mother had specifically cautioned the teachers and the principal of the need to keep a watchful eye on him

and had informed them that Doe was receiving professional treatment for his problems. Despite Mr. Doe's known behavioral problems, the School District appointed him to a position as a "janitor's assistant," through which he gained access to certain unsupervised areas of the school.

In early November 1993, the teachers became aware that Mr. Doe was engaging in aggressive, sexually inappropriate conduct toward Ms. Jones. At about that same time, Ms. Murrell informed the teachers that Mr. Doe had been making harassing phone calls to Ms. Jones at her home. According to the complaint, it was also during this time that Mr. Doe sexually assaulted Ms. Jones on multiple occasions. Sometime in November, Mr. Doe took Ms. Jones to a secluded area and sexually assaulted her. Ms. Jones, who was menstruating at the time, bled and vomited during the course of the assault and battery. Upon discovering Mr. Doe and Ms. Jones, a janitor told them to clean up the mess, returned them to class, and advised the teachers where he had found them. Although the teachers allegedly knew that Mr. Doe had sexually assaulted Ms. Jones on this occasion, they did not so inform Ms. Murrell. Ms. Murrell learned that Ms. Jones had gotten menstrual blood on her clothing and that the teachers had tied other clothing around her waist to hide it, but Ms. Murrell was never told that the janitor had found Mr. Doe and Ms. Jones in a secluded, unsupervised area, nor was Ms. Murrell informed of any of the circumstances leading to the

soiling of Ms. Jones' clothing. On at least one of the occasions on which Mr. Doe battered and sexually assaulted her, Ms. Jones informed the teachers of Mr. Doe's conduct. The teachers told Ms. Jones not to tell her mother about the incident and encouraged her to forget it had happened at all. On or about November 24, 1993, Mr. Doe again took Ms. Jones to a secluded area of the school and battered and sexually assaulted her. Although the teachers knew she had been battered and may have known she was sexually assaulted, they informed Ms. Jones' mother only about the non-sexual battery.

Because of these incidents and because she had begun to engage in self-destructive and suicidal behavior, Ms. Jones left school and entered a psychiatric hospital. Only then did Ms. Murrell learn about the sexual assaults and the batteries of her daughter by Mr. Doe. Although Ms. Murrell immediately contacted the teachers to advise them of what she had learned from Ms. Jones, the teachers denied the incidents could have occurred, told Ms. Murrell to send Ms. Jones back to school, and refused to discuss the matter further. Ms. Murrell asked that the information be provided to Principal Johnston in order that she might investigate Ms. Jones' allegations. Ms. Murrell then telephoned the principal herself and left a message on her answering machine. The principal neither returned Ms. Murrell's call nor undertook any investigation of the alleged incidents.

Following her release from the hospital, Ms. Jones attempted to return to school on December 6, 1993, but stayed for only one day because she was once again battered by Mr. Doe and ridiculed by other students for Mr. Doe's earlier sexual attacks on her. After making several unsuccessful attempts to contact the principal, Ms. Murrell eventually learned from the teachers and Mr. Doe's mother that a meeting had been scheduled to discuss Mr. Doe's sexual conduct with Ms. Jones. That meeting took place on December 10 at GWHS and was attended by the principal, Mr. Doe's mother, the teachers, Ms. Murrell and her husband, and Ms. Jones. The teachers and the principal were hostile towards Ms. Jones and Ms. Murrell. Indeed, the principal allegedly suggested that the sexual contact between Mr. Doe and Ms. Jones might have been consensual, although she knew Ms. Jones was legally incapable of consenting and that Mr. Doe had admitted assaulting Ms. Jones after she had resisted his advances. The principal declined to investigate the incident, and when Ms. Murrell suggested that both students be suspended pending an investigation, the principal responded by suspending only Ms. Jones for "[b]ehavior which is detrimental to the welfare, safety, or morals of other pupils or school personnel." Aplt. App. at 14.

In the meantime, the School District neither notified appropriate law enforcement officials of the alleged sexual assaults by Mr. Doe nor disciplined him in any way. Not only did Mr. Doe continue to attend GWHS after the

-8-

December 1993 meeting, he retained his job as a janitor's assistant with the same access to all parts of the school he had previously enjoyed.

## II.

We review *de novo* the grant of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), accepting as true the factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiff. *See Seamons*, 84 F.3d at 1231-32. Dismissal is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987). "The Federal Rules of Civil Procedure require only that the pleadings give a defendant notice of the nature of the claims against him." *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1127 (10th Cir. 1998).

## A.

We begin by addressing the School District's argument that dismissal is required because educational institutions are not liable under Title IX for peer sexual harassment. In dismissing the action, the district court concluded Ms. Murrell failed to establish institutional liability based on the Fifth Circuit's

opinion in *Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d 1006, 1011, n.11, 1012 (5th Cir. 1996), which held that agency principles do not apply under Title IX and a school district is not liable for the conduct of a harassing student because the student is not an agent of the school, *id.*

After oral argument on appeal, we abated this case pending the Supreme Court's review of *Davis v. Monroe County Bd. of Educ.*, 120 F.3d 1390 (11th Cir. 1997), *cert. granted*, 119 S. Ct. 29 (1998). The Court has now handed down an opinion in that case addressing "whether a recipient of federal education funding may be liable for damages under Title IX under any circumstances for discrimination in the form of student-on-student sexual harassment." *Davis v. Monroe County Bd. of Educ.*, 119 S. Ct. 1661, 1669 (1999). Specifically, the Court considered "whether a district's failure to respond to [such] harassment can support a private suit for money damages." *Id.* The Court decided that it could, holding:

> funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

*Id.* at 1675. Because *Davis* directly addresses many of the issues here, we analyze Ms. Murrell's claim in light of this recent precedent, having received supplemental briefing from the parties on the effect of *Davis*.

-10-

In *Davis*, the Supreme Court considered whether the Monroe County Board of Education could be held liable for its failure to respond to LaShonda D.'s numerous complaints that a fellow student, G. F., was sexually harassing her. LaShonda was a fifth grader at a Monroe County elementary school. She alleged that from December 1992 to May 1993, G. F. engaged in a course of sexually harassing conduct during which he, inter alia, attempted to touch her breasts and genital area, made vulgar comments to her, and rubbed his body against hers in a sexually suggestive manner. *Id.* at 1667. LaShonda reported some of these incidents to classroom teachers, and reported others to her mother, Aurelia Davis, who then contacted the teachers. *Id.* At least one teacher assured Ms. Davis that the principal had been informed of the harassing incidents. *Id.* In addition, LaShonda and other female students unsuccessfully requested a meeting with the principal to discuss G. F.'s behavior. In mid-May, Ms. Davis met with the principal, who was unsympathetic to the problem. *Id.* At no time did the school discipline G. F. and only after more than three months of reported harassment did it permit LaShonda to change her classroom seat so she was no longer seated next to G. F. *Id.* G. F.'s conduct interfered with LaShonda's school attendance and performance, which was evidenced by a drop in her grades over the relevant time period. Ms. Davis sued the school district for monetary and injunctive relief under Title IX.

Title IX provides in relevant part, "'[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *Id.* at 1669 (quoting 20 U.S.C. § 1681(a) (1994)). Title IX is enforceable through an implied private right of action for which money damages are available. *See id.*[3]

*Davis* affirmed that "a recipient of federal funds may be liable in damages under Title IX only for its own misconduct." *Id.* at 1670; *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 118 S. Ct. 1989, 1998 (1998) (rejecting the application of vicarious liability and agency principles as bases for holding school districts liable under Title IX). Applying this principle, the Court found Ms. Davis had a viable claim because she "attempt[ed] to hold the Board liable for its *own* decision to remain idle in the face of known student-on student harassment in its schools." *Davis*, 119 S. Ct. at 1670 (emphasis added). She did not assert the school district was liable for G. F.'s (or any other third party's) inappropriate conduct. Title IX permits liability in such a case.

In order to confine Title IX liability to those cases in which the school

---

[3]Because Title IX is Spending Clause legislation, "private damages actions are available only where recipients of federal funding had adequate notice that they could be liable for the conduct at issue." *Davis*, 119 S. Ct. at 1670. If funding recipients had adequate notice, they might be liable for damages under the rule that *Davis* articulates. *See id.* at 1672-73.

district itself acted improperly, *Davis* imposes liability only if the district remains deliberately indifferent to acts of harassment of which it has actual knowledge. *Id.* at 1672. That standard makes a school district liable only where it has made a conscious decision to permit sex discrimination in its programs, and precludes liability where the school district could not have remedied the harassment because it had no knowledge thereof or had no authority to respond to the harassment. After all, "[d]eliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment. A recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action." *Id.* This rationale and the plain language of Title IX "limit a recipient's damage liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Id.*

*Davis* also recognizes the difference between children and adults, and between school and workplaces. The Court emphasized that

> [d]amages are not available for simple acts of teasing and name-calling among school children . . . even where these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are only available where the behavior is so severe, pervasive, and objectively offensive that it denies victims the equal access to education that Title IX is designed to protect.

*Id.* at 1675.

In sum, a plaintiff must allege four factors to state a claim of school district

-13-

liability under Title IX. She must allege that the district (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school. *Id.* at 1671-72. This limited rule imposes liability only on those school districts that choose to ignore Title IX's mandate for equal educational opportunities.

We now consider Ms. Murrell's claim in light of *Davis* and other relevant authority. The School District's argument and the district court's order dismissing the case both rest on the premise that an educational institution cannot be held liable under Title IX for conduct not attributable to the institution itself. The School District frames the question before us as whether Title IX imposes "an affirmative duty on educational institutions receiving federal financial assistance to prevent students from sexually harassing or assaulting one another," Aplee. Br. at 1, and asserts that the plain language of the statute and the dictates of the Spending Clause preclude holding a grant recipient liable for the acts of its students. This argument misconstrues the nature of the liability Ms. Murrell seeks to impose. Like the plaintiff in *Davis*, Ms. Murrell asserts that school officials had actual knowledge of the repeated sexual assault of her daughter and yet decided to remain idle. Ms. Murrell thus seeks to hold the School District liable for its own "intentional conduct that violates the clear terms of [Title IX]."

*Davis*, 119 S. Ct. at 1671.

The Court in *Davis* did not expressly set out the standard for determining when a school board has sufficient notice that harassment is taking place to be liable for failing to respond appropriately. Nonetheless, in contrasting a school district's liability for its own failure to act with liability improperly based on agency principles, the Court held that liability properly attaches when the misconduct "takes place while the students are involved in school activities or otherwise under the supervision of school employees." *Id.* at 1672-73. In so doing, the Court cited with approval *Doe v. University of Ill.*, 138 F.3d 653, 661 (7th Cir. 1998). *Doe* in turn held that a school district is liable if "a school official who had actual knowledge of the abuse was invested by the school board with the duty to supervise the [harasser] and the power to take action that would end such abuse and failed to do so." *Id.* at 668 (internal quotation omitted); *see also Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir. 1997). Accordingly, we believe the first two prongs of the *Davis* analysis require that a school official who possessed the requisite control over the situation had actual knowledge of, and was deliberately indifferent to, the alleged harassment.

We decline simply to name job titles that would or would not adequately satisfy this requirement. "[S]chool districts contain a number of layers below the school board: superintendents, principals, vice-principals, and teachers and

coaches, not to mention specialized counselors such as Title IX coordinators. Different school districts may assign different duties to these positions or even reject the traditional hierarchical structure altogether." *Rosa H.*, 106 F.3d at 660. Because officials' roles vary among school districts, deciding who exercises substantial control for the purposes of Title IX liability is necessarily a fact-based inquiry. *Davis* makes clear, however, that a school official who has the authority to halt known abuse, perhaps by measures such as transferring the harassing student to a different class, suspending him, curtailing his privileges, or providing additional supervision, would meet this definition.

Turning to Ms. Murrell's complaint, we conclude she has sufficiently alleged actual knowledge and deliberate indifference. Ms. Murrell alleged that she telephoned Principal Johnston to discuss Mr. Doe's harassing conduct, and therefore that the principal had actual knowledge of the assaults at least as of the time Ms. Jones was in the hospital. Nevertheless, Principal Johnston failed to take any action to remedy the situation when Ms. Jones returned to school. Indeed Principal Johnston allegedly refused to investigate the matter or discipline Mr. Doe, and instead suspended Ms. Jones and suggested that the sexual conduct was consensual.

We find little room for doubt that the highest-ranking administrator at GWHS exercised substantial control of Mr. Doe and the GWHS school

environment during school hours, and so her knowledge may be charged to the School District. *See Davis*, 119 S. Ct. 1661 (finding a basis for Title IX liability when principal allegedly had actual knowledge of sexual harassment and failed to respond to ameliorate the situation).[4] The Denver Public Schools' sexual harassment policy, which prohibits peer sexual harassment, provides that "grievances would routinely be filed" with the principal. Aplt. App. at 117-18. Principal Johnston had the authority to suspend students "for '[b]ehavior which is detrimental to the welfare, safety, or morals of other pupils,'" *id.* at 14; indeed, she allegedly enforced this policy against Ms. Jones, although not against Mr. Doe. According to the complaint, the principal and teachers "never appropriately disciplined Doe," *id.*, and he continued to enjoy access to unsupervised parts of the GWHS facility. Principal Johnston's alleged "response to the harassment or lack thereof [wa]s clearly unreasonable in light of the known circumstances." *Davis*, 119 S. Ct. at 1674. Her complete refusal to investigate known claims of

---

[4]We also note that in *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60 (1992), a teacher-student harassment case, no school official above the principal had notice of the alleged sexual harassment. *See Franklin v. Gwinnett County Pub. Sch.*, 911 F.2d 617, 618 (11th Cir. 1990), *rev'd,* 503 U.S. 60 (1992) (noting that the band director, assistant principal, and later principal knew of the inappropriate conduct). In *Gebser v. Lago Vista Indep. Sch. Dist.*, 118 S. Ct. 1989 (1998), the Court noted that in *Franklin* actual notice could be satisfied because "there was evidence that school officials knew about the harassment but took no action to stop it." *Id.* at 1995-96. In contrast, in *Gebser* the principal had no knowledge of the teacher's sexual relationship with the plaintiff, and therefore the school district did not have actual notice of the harassment. *See id.* at 2000.

-17-

the nature advanced by Ms. Murrell, if true, amounts to deliberate indifference. As Ms. Murrell has adequately alleged actual knowledge and deliberate indifference on the part of Principal Johnston, she has satisfied the first two elements of the *Davis* inquiry.

Ms. Murrell also asserts that the teachers had a duty to supervise and ensure the safety of all GWHS students including Ms. Jones. They allegedly had actual knowledge of Mr. Doe's conduct toward Ms. Jones from almost the moment it began to occur, and not only refused to remedy the harassment but actively participated in concealing it, including telling Ms. Jones not to inform her mother of Mr. Doe's actions and refusing to inform her mother themselves when presented with myriad opportunities to do so. It is possible that these teachers would also meet the definition of "appropriate persons" for the purposes of Title IX liability if they exercised control over the harasser and the context in which the harassment occurred. Where the victim is complaining about a fellow student's action "during school hours and on school grounds," *id.* at 1672, teachers may well possess the requisite control necessary to take corrective action to end the discrimination. *See Gebser*, 118 S. Ct. at 2004 n.8 (Stevens, J., dissenting) ("If petitioner had been the victim of sexually harassing conduct by other students during those classes, surely the teacher would have had ample authority to take corrective measures."). At this stage in the proceedings we must

-18-

accept as true the allegation that Ms. Jones's teachers were invested with the authority to halt Mr. Doe's known sexually assaultive behavior. If they were, their alleged response quite plainly amounts to deliberate indifference.

We next consider whether the harassment inflicted upon Ms. Jones was sufficiently "severe, pervasive, and objectively offensive" to satisfy *Davis*, 119 S. Ct. at 1676. Ms. Murrell has alleged that over the course of about a month, Mr. Doe repeatedly took Ms. Jones to a secluded area and battered, undressed, and sexually assaulted her. Although Mr. Doe's behavior did not last as long as the harassment in *Davis*, we easily conclude that Ms. Murrell has alleged wrongdoing "sufficiently severe, pervasive and objectively offensive" to state a claim.

Our final consideration under *Davis* is whether the school officials' deliberate indifference deprived Ms. Jones of access to the educational opportunities or benefits provided by GWHS. Again, we have little difficulty concluding that it did under the allegations set forth here. After the assaults, Ms. Jones became a danger to herself and had to leave school to be hospitalized. Moreover, Principal Johnston suspended Ms. Jones when Ms. Murrell suggested the School District should investigate the claim. Ms. Jones is now home bound as a result of her experience at GWHS. The School District's deliberate indifference to her claims totally deprived Ms. Jones of its educational benefits.

Ms. Murrell's complaint satisfies the four factors necessary to impose Title

IX liability on school districts for student-on-student harassment and she has therefore stated a claim on which relief can be granted. We reverse the district court's order dismissing Ms. Murrell's Title IX claim.

## B.

We next address the district court's dismissal of Ms. Murrell's claim under 42 U.S.C. § 1983. Ms. Murrell alleged that by failing to take steps to eradicate the hostile environment created by Mr. Doe, the School District, and the principal and teachers individually, deprived Ms. Jones of her constitutional right to equal protection of the laws under the Fourteenth Amendment.[5] The district court summarily dismissed the equal protection claim. On appeal, defendants argue that the claim was properly dismissed on the following grounds: 1) Ms. Murrell's complaint fails to allege intentional gender-based discrimination by the School District in the form of an official policy to discriminate and therefore fails to state an equal protection claim as a matter of law; 2) *respondeat superior* liability is not available under section 1983; and 3) the individual defendants are entitled to qualified immunity.

---

[5]Ms. Murrell argued below that the School District violated Ms. Jones's rights under the Due Process Clause by failing to protect her from harassment by Mr. Doe. Ms. Murrell has not revisited that claim in this appeal and we therefore deem it waived.

1. *School district liability for sexual harassment under the Equal Protection Clause*

The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Denials of equal protection by a municipal entity or any other person acting under color of state law are actionable under 42 U.S.C. § 1983. It is well established in this circuit that sexual harassment by a state actor can constitute a violation of the equal protection clause. *See Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989) (quoting *Bohen v. City of East Chicago*, 799 F.2d 1180, 1185 (7th Cir. 1986) ("'Sexual harassment of female employees by a state employer constitutes sex discrimination for purposes of the equal protection clause of the fourteenth amendment.'")).

In order to establish municipal, or in this case School District, liability for sexual harassment under the Fourteenth Amendment, a plaintiff must demonstrate that a state employee's discriminatory actions are representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority. *See Randle v. City of Aurora*, 69 F.3d 441, 446-50 (10th Cir. 1995). To subject a governmental entity to liability, "a municipal policy must be a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a muncipality's] officers.'" *See Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (quoting *Starrett*, 876 F.2d at 818); *see also*

-21-

*Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978). Absent such an official policy, a municipality may also be held liable if the discriminatory practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford*, 73 F.3d at 286 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970)).

We agree with the School District that even the most liberal construction of Ms. Murrell's complaint fails to reveal any allegation that the School District engaged in an official policy of deliberate indifference to sexual harassment. Acts that do not rise to the level of official policy may nonetheless create liability if they are sufficiently widespread and pervasive so as to constitute a "custom." *See Starrett*, 876 F.2d at 820. However, acts of sexual harassment by a student directed solely at Ms. Jones do not demonstrate a custom or policy of the School District to be deliberately indifferent to sexual harassment as a general matter. *See Monell*, 436 U.S. at 691 & n.56.

In addition, plaintiffs' complaint gives no indication that either the principal or the teachers possessed the "final policymaking authority" the Supreme Court requires for purposes of establishing municipal liability under section 1983 on the basis of a decision specific to a particular situation. *See Randell*, 69 F.3d at 447-50; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). Ms. Murrell's

section 1983 claim against the School District was therefore properly dismissed.[6]

2.  *Individual liability of the principal and teachers for sexual harassment under the Equal Protection Clause*

By way of contrast to the institution itself, a governmental official or supervisory employee may be held liable under section 1983 upon a showing of deliberate indifference to known sexual harassment. Although conduct by a state actor is required in order to support a claim under section 1983 and the primary conduct in this case is that of a student, we have found the possibility of state action where "a supervisor or employer participates in or *consciously acquiesces* in sexual harassment by an outside third party or by co-workers." *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994) (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992) (emphasis added)). "[L]iability under § 1983 must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant" and not upon mere negligence. *Woodward*, 977 F.2d at 1399. In order to state a claim of "deliberate" discriminatory conduct, Ms. Murrell must state facts sufficient to allege "defendants actually knew of and

---

[6]Ms. Murrell argues on appeal that the district court erred in refusing to grant her leave to amend her complaint. Under our precedent, however, Ms. Murrell's pleadings below did not place a motion to amend before the court and the court therefore did not err in failing to address the matter. *See Calderon v. Kansas Dep't of Soc. & Rehabilitation Servs.*, No. 98-3183, 1999 WL 454360 (10th Cir. July 6, 1999); *Glenn v. First Nat'l Bank*, 868 F.2d 368, 370-71 (10th Cir. 1989).

acquiesced in" Mr. Doe's behavior. *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995). This is precisely Ms. Murrell's claim – that the principal and the teachers knew about Mr. Doe's harassment of Ms. Jones and acquiesced in that conduct by refusing to reasonably respond to it.[7] Ms. Murrell has therefore stated a claim under section 1983 against the principal and the teachers in their individual capacities unless their assertion of qualified immunity is valid.

In an action under section 1983, individual defendants are entitled to

---

[7]Throughout its briefs, the School District repeatedly attempts to characterize the conduct by school officials of which Ms. Murrell complains as a failure to *prevent* one student from harassing another. Although it is true that Ms. Murrell originally alleged, but has apparently since abandoned, a Fourteenth Amendment due process claim based on the School District's failure to protect Ms. Jones given the School District's knowledge of her impairments and Mr. Doe's proclivities, her remaining claims allege that the School District failed to reasonably respond to sexual harassment of which it had actual knowledge. We agree with the School District that a failure to prevent sexual harassment by a student *before it occurs* does not violate Title IX or the Fourteenth Amendment absent a showing of an institutional policy of indifference. However, a refusal to remedy known sexual harassment is actionable.

We also note the School District's repeated efforts to argue that Ms. Murrell's complaint does not allege actual knowledge of Mr. Doe's conduct by the principal or the teachers. This amounts to a blatant misstatement of the allegations in the complaint. It is not remotely credible for the School District to argue a failure to allege actual knowledge when the complaint – though hardly a model of clarity – quite clearly asserts, among other things, that the principal refused to investigate Doe's conduct after she was informed of it by Ms. Murrell, that the teachers knew Doe had sex with Ms. Jones and told her not to inform her mother about it, and that Doe admitted to the teachers that he had sex with Ms. Jones without her consent. It is possible that the course of litigation will reveal these allegations to be untrue. However, our only inquiry on this review of a motion to dismiss is to determine whether the allegations were made, not whether they are true.

qualified immunity unless it is demonstrated that their alleged conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order for the law to be clearly established, "there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). In this circuit, it has been clearly established since our holding in 1989 in *Starrett*, 876 F.2d at 814, that "sexual harassment . . . can violate the Fourteenth Amendment right to equal protection of the laws." *See Woodward*, 977 F.2d at 1398. Moreover, it has been clearly established since at least 1992 that a person who exercises the state's supervisory authority may be held liable for consciously acquiescing in sexually harassing conduct by a non-state actor over whom the state actor has authority. *Id.* at 1401. The events forming the basis for Ms. Murrell's claims in this case occurred in late 1993.

The School District asserts the individual defendants are entitled to qualified immunity because there has previously been no case holding an individual *school employee* liable for sexual harassment under the Fourteenth Amendment. This argument carries the concept of "clearly established" to an extreme we decline to adopt. We have never said that there must be a case

presenting the exact fact situation at hand in order to give parties notice of what

constitutes actionable conduct. Rather, we require parties to make reasonable

applications of the prevailing law to their own circumstances:

> The contours of the right must be sufficiently clear that a reasonable
> official would understand that what he is doing violates that right.
> *This is not to say that an official action is protected by qualified
> immunity unless the very action in question has previously been held
> unlawful* . . . but it is to say that in light of pre-existing law the
> unlawfulness must be apparent.

*Id.* at 1398 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987))

(emphasis added). Applying this test, the fact that we have said other supervisory

municipal employees may be held liable under the Fourteenth Amendment for

deliberate indifference to the discriminatory conduct of third parties was

sufficient to make apparent the unlawfulness of such deliberate indifference by a

school employee exercising supervisory authority over students.[8]

---

[8]The School District also cites *Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1450-51 (9th Cir. 1995), in support of its claim that the individual defendants are entitled to qualified immunity because peer harassment under Title IX was not clearly established as actionable when the conduct at issue in this case occurred. This argument is unavailing because Ms. Murrell's section 1983 claim is predicated not on Title IX, but rather on the Fourteenth Amendment. A state actor's acquiescence in sex discrimination is independently actionable under the Fourteenth Amendment regardless of the dictates of Title IX which, as noted above, provides its own private right of action. *Cf. Gebser*, 118 S. Ct. at 2000 ("Our decision does not affect any right of recovery that an individual may have against a school district . . . or against [a teacher] in his individual capacity under . . . 42 U.S.C. § 1983."); *Starrett*, 876 F.2d at 814 ("If a plaintiff can show a constitutional violation by someone acting under color of state law, then the
(continued...)

Because Ms. Murrell properly alleges that the principal and the teachers, who had supervisory authority over the students at GWHS, met Mr. Doe's sexually harassing conduct with deliberate indifference, and because they are not entitled to qualified immunity, we reverse the district court's order dismissing the Section 1983 equal protection claim against the principal and the teachers in their individual capacities.

## III.

We **REVERSE** the district court's order dismissing Ms. Murrell's Title IX claim, as well as its order dismissing Ms. Murrell's section 1983 equal protection claim as to the individual defendants, and **REMAND** for further proceedings consistent with this opinion. We **AFFIRM** the district court's order dismissing the section 1983 equal protection claim against the School District.

---

[8](...continued)
plaintiff has a cause of action under Section 1983, regardless of Title VII's concurrent application.").

No. 97-1055, <u>Murrell v. School Dist. No. 1</u>

Anderson, Circuit Judge, concurring in part and concurring in the judgment:

The majority wisely "decline[s] . . . to name job titles that would or would not adequately satisfy" <u>Davis</u>' requirement that the school have control over the harassing student for a finding of Title IX liability. Slip op. at 15. <u>Davis</u> did not answer this question precisely, leaving liability limited in general terms to cases involving "an official decision by the [Title IX] recipient not to remedy the violation." 119 S. Ct. at 1671 (quoting <u>Gebser v. Lago Vista Independent Sch. Dist.</u>, 524 U.S. 274, 290 (1998)); <u>see also</u> <u>Davis</u>, 119 S. Ct. at 1688 (Kennedy, J., dissenting) ("[T]he majority says not one word about the type of school employee who must know about the harassment before it is actionable.").

I write separately to point out that given the facts of this case, some of the language in the majority's Title IX analysis is unnecessarily broad. After concluding that Principal Johnston's alleged deliberate indifference and actual knowledge are enough to trigger liability under Title IX, the majority proceeds to state that "teachers may well possess the requisite control necessary to take corrective action to end . . . discrimination." Slip op. at 18. So stating, the majority implies that a single teacher's inaction may in some circumstances be enough to trigger Title IX liability. That question is not before us in this case, at least not at this juncture. There is simply no need for such employee-by-

employee analysis, given that the facts alleged clearly amount to an "official decision" by Principal Johnston, the highest-ranking school official, "not to remedy the violation." Davis, 119 S. Ct. at 1671. A single teacher's sexual misconduct was not enough to subject a recipient to liability in Gebser, and I believe it is still an open question after Davis whether a single teacher's indifference is ever sufficient for recipient liability, notwithstanding the Davis dissent's characterization of the opinion, see Davis, 119 S. Ct. at 1689 (Kennedy, J., dissenting) (postulating that a district might "be held liable for a teacher's failure to remedy peer harassment.").

Moreover, with respect to Ms. Murrell's Equal Protection Clause claim against the principal and the teachers individually, I emphasize that the "deliberate indifference" standard provides a high hurdle for plaintiffs. Such a high hurdle is necessary, given the myriad contacts which occur daily in this country between teachers and students and between students and their peers. The allegations in this case are so egregious, however, that I agree that Ms. Murrell has stated a claim against the principal and the teachers under the Equal Protection Clause. Whether less egregious facts will suffice in future cases remains to be seen.