TACHA, Chief Circuit Judge,
concurring.
I concur in the judgment. This case presents the question of whether a principal’s deliberate indifference to known incidents of student-on-student racial harassment can constitute intentional discrimination under § 601 of Title VI and thereby ground a private suit for damages against a school district receiving federal funds. I agree with the majority that, in certain circumstances, it can. I also agree that plaintiffs have alleged facts sufficient to — narrowly—survive summary judgment.
I write separately for two reasons. First, the district court erred in its application of Sandoval to the plaintiffs’ theory of liability, which relied upon evaluative *935 criteria set forth in a regulation promulgated pursuant to § 602. Because I think it important to clarify the relationship between such regulations and the private right of action under § 601, I begin with a brief discussion of Sandoval and its interaction with the Court’s prior holding in Davis. Second, I write separately to emphasize to the district court that Davis painstakingly limits the range of facts that, if proved, will support a finding of liability and an award of damages under this theory.

A. Section § 601 Creates a Private Right of Action to Enforce Title Vi’s Prohibition on Intentional Discrimination.

In Alexander v. Sandoval, the Supreme Court reaffirmed that it is “beyond dispute that private individuals may sue to enforce § 601” of Title VI and obtain both damages and injunctive relief. 532 U.S. 275, 280, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). “[I]t is similarly beyond dispute ... that § 601 prohibits only intentional discrimination.” Id. The Court went on to hold that, in contrast, § 602, which authorizes federal agencies “to effectuate the provisions of [§ 601] ... by issuing rules, regulations, or orders of general applicability,” neither expressly nor impliedly creates a freestanding private right of action to enforce such regulations. Id. at 288-93 (quoting 42 U.S.C. § 2000d-1). That is not to say, however, that regulations promulgated under § 602 may never invoke the private right of action that exists to enforce § 601. Rather, the Court merely held that § 601, which only prohibits intentional discrimination, determines the availability of a private right of action:
Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not. Thus, when a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer’s apprentice but not the sorcerer himself.
Id. at 291, 121 S.Ct. 1511 (internal citations and quotation marks omitted).
In this case, because plaintiffs’ hostile environment claim “rel[ied] heavily upon evaluative criteria established by a Department of Education regulation promulgated pursuant to § 602,”[1] the district court concluded that
Plaintiffs’ claim that the school district has permitted the existence of a racially hostile environment in violation of Title VI must ... fail. Since this claim is for non-intentional discrimination under title VI, which is permissible under § 601, by necessity it must arise under § 602. Therefore, it may not be remedied by a private right of action.
Dist. Ct. Order at 7-8. The district court correctly determined that § 601 — and only § 601 — creates a private right of action, and that this action may enforce only § 601’s prohibition on intentional discrimination. In granting the school district’s motion for summary judgment on these grounds, however, the district court erred in two respects. First, it was error to hold that plaintiffs’ reliance on the evaluative criteria set forth in the regulation mandated summary judgment in favor of the *936 school district. As the foregoing discussion of Sandoval demonstrates, language in a regulation promulgated under § 602 may invoke the private right of action created by § 601. Thus, the question in all eases remains whether a plaintiffs complaint states a cognizable claim for intentional discrimination, not whether it relies on a § 602 regulation for an articulation of the circumstantial evidence the plaintiff offers to support her private action. Second, as discussed infra, the district court erred in determining that deliberate indifference to a racially hostile environment could not constitute intentional discrimination under § 601.
B. “Deliberate Indifference” to Known Acts of Discrimination Can Constitute Intentional Discrimination Under Title VI.
While Sandoval sets forth the test for determining whether a statute implies a particular private right of action, we are not called upon in this case to consider- — as a matter of first impression — whether Title VI can ever support a private right of action for deliberate indifference to a racially hostile environment.
Two years before Sandoval, in Davis v. Monroe County Board of Education, the Supreme Court determined that, in certain circumstances, “deliberate indifference to known acts of [student-on-student] harassment” can constitute “an intentional violation of Title IX, capable of supporting a private damages action.”[2] 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). See also Murrell v. School Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1245-46 (10th Cir.1999) (applying Davis to hold that deliberate indifference to known instances of sexual harassment can support liability under Title IX). The Court’s reasoning in Davis, and ours in Murrell, guide our resolution of the instant case because, as the Court has pointed out more than once, Congress based Title IX on Title VI. Thus, the Court’s analysis of what constitutes intentional sexual discrimination under Title IX directly informs our analysis of what constitutes intentional racial discrimination under Title VI (and vice versa). See Sandoval, 532 U.S. at 279-80, 121 S.Ct. 1511; Cannon v. Univ. of Chicago, 441 U.S. 677, 694-95, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (“Title IX was patterned after Title VI.... Except for the substitution of the word ‘sex’ in Title IX to replace the words ‘race, color, or national origin’ in Title VI, the two statutes use identical language to describe the benefitted class.”); see also Jackson v. Birmingham Bd. of Educ., 309 F.3d 1333, 1339 (11th Cir.2002) (“Because we ... read Titles VI and IX in pari materia, Sandoval’s interpretation of Title VI powerfully informs our reading of Title IX.”). Because deliberate indifference to known *937 instances of student-on-student racial harassment is a viable theory in a Title VI intentional discrimination suit, I consider it important to discuss the standards that guide our disposition of the instant motion and which, in my judgment, must guide the district court’s inquiry on remand.[3]

C. The Test: (1) Did Student-on-Student Conduct at Plaintiffs’ School Constitute a Racially Hostile Educational Environment, to Which (2) Defendant Was Deliberately Indifferent?

Plaintiffs in this case allege that Principal Jackson was deliberately indifferent to known and pervasive acts of student-on-student racial harassment. Properly phrased, then, the question before us— which we have answered in the affirmative — is whether, in response to defendants’ Rule 56 motion, plaintiffs have pointed to genuine issues of material fact as to the existence of a racially hostile environment at their school, to which Principal Jackson was deliberately indifferent. In answering this question, the Supreme Court’s analysis in Davis determines what facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (when considering whether a genuine issue of material fact exists, “the substantive law will identify which facts are material”).
In Murrell, we interpreted Davis as setting forth four factors a plaintiff must allege to state a Title IX claim against a school district under the deliberate indifference theory:
She must allege that the district (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school. This limited rule imposes liability only on those school districts that choose to ignore Title IX’s mandate for equal educational opportunities.
Murrell, 186 F.3d at 1246.
In applying this test to plaintiffs’ hostile environment claim in this case, the district court on remand must remain mindful of the Court’s guidance as to when harassment constitutes a hostile environment and when mere inaction constitutes deliberate indifference. As Murrell indicates, the standard set forth by the Davis Court, which must guide the district court’s inquiry on remand into whether defendant’s alleged failure to act subjected plaintiffs to a “racially hostile environment,” is quite high:
[F]unding recipients are properly held liable in damages only where they are deliberately indifferent to [racial] harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.
Id. at 650, 119 S.Ct. 1661 (emphasis added). The following principles, articulated by the Davis court, must guide the district court’s inquiry into whether Principal Jackson’s alleged failure to act rose to the level of “deliberate indifference” and thereby constituted intentional discrimination under § 601:
*938 [F]unding recipients are deemed “deliberately indifferent” to acts of student-on-student harassment only where the recipient’s response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.... [T]he recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable. This is not a mere “reasonableness” standard .... In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not “clearly unreasonable” as a matter of law.
Id. at 648-49, 119 S.Ct. 1661 (emphasis added).
As the foregoing language demonstrates, the Court’s discussion — of both the elements constituting a hostile environment and the degree of egregiousness necessary to elevate inaction to “deliberate indifference” — is replete with qualifications, caveats, and modifiers, to which the district court must remain attentive.[4] As the dissent in Davis pointed out, “[t]he string of adjectives the majority attaches to the word ‘harassment’ [does not] narrow the class of conduct that can trigger liability” in such a way as to make resolution of such cases simple.[5] I nonetheless discern in the number and complexion of those modifiers at least one clear message: the compass of facts supporting liability under the deliberate indifference theory is narrow and heavily qualified. See id. at 644-53, 119 S.Ct. 1661.

D. Conclusion

As I have pointed out, we remand because genuine issues of material fact exist as to whether pervasive student-on-student racial harassment at the school gave rise to a hostile educational environment and whether the remedial action, or lack thereof, taken by Principal Jackson constituted deliberate indifference. Maj. op., supra at 933 & n. 3 (citing the record). In particular, there is a question as to whether Principal Jackson’s response prior to the Feb *939 ruary 8, 2000, fight met the standard set forth in Davis.[6] Thus, on remand, the district court must determine whether Principal Jackson’s actions before the fight were “clearly unreasonable” in light of known circumstances, such that they subjected plaintiffs to an educational environment that was “so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school.”

. Racial Incidents and Harassment Against Students at Educational Institutions: Investigative Guidance, 59 Fed.Reg. 11448 (March 10, 1994).

. At issue in Davis was whether Title IX adequately notified recipients of federal funds that they might be subject to liability on a deliberate indifference theory.
[P]rivate damages actions are available only where recipients of federal funding had adequate notice that they could be liable for the conduct at issue. When Congress acts pursuant to its spending power, it generates legislation much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions. In interpreting language in spending legislation, we thus insist that Congress speak with a clear voice, recognizing that there can, of course, be no knowing acceptance of the terms of the putative contract if a State is unaware of the conditions imposed by the legislation or is unable to ascertain what is expected of it.
Davis, 526 U.S. at 640, 119 S.Ct. 1661 (quoting Pennhurst State School and Hosp. v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981)) (internal citations, alterations, and quotation marks omitted). The Court held that notice was adequate. Id. at 634-45, 119 S.Ct. 1661.

. For understandable reasons, defendant relies on Pryor v. NCAA for the proposition that "applying [a] ‘deliberately indifferent’ standard to a Title VI purposeful-discrimination case” would "eviscerate the Supreme Court’s ruling in [Sandoval]" and "turn [Sandoval] on its head.” 288 F.3d 548, 568 (3d Cir.2002). Because I find the Pryor panel’s reasoning irreconcilable with Davis, defendant's reliance is, in my judgment, misplaced.

. See id. at 644-53, 119 S.Ct. 1661. In formulating its standards for "deliberate indifference” and "hostile environment,” the Court noted, inter alia, the following factors limiting the circumstances in which a funding recipient may be held liable on this theory. First, the statutory language and the deliberately indifferent standard combine to "narrowly circumscribe” the set of parties whose behavior can subject the funding recipient to liability. For the deliberate indifference theory to be available under Title IX, the funding recipient must have "some control over the alleged harassment” and the "authority to take remedial action.” Id. at 644, 119 S.Ct. 1661 (citations omitted). Second, the language of the statute, combined with the requirement that funding recipients have notice of their potential liability, also "cabins the range of misconduct that the statute proscribes_ [A funding recipient’s] deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable’ to it.” Id. at 644-45, 119 S.Ct. 1661 (citations omitted) (emphasis added). Third, because the harassment must occur " 'under' ‘the operations of [the] funding recipient, the harassment must take place in a context subject to the school district’s control.” Id. at 645, 119 S.Ct. 1661 (internal citations omitted) (emphasis added). Fourth, the Court also expressed concern that school administrators should "continue to enjoy the flexibility they require” to perform their jobs. Id. at 648, 119 S.Ct. 1661.
A determination of whether particular conduct satisfies these factors " 'depends on a constellation of surrounding circumstances, expectations, and relationships.’ ” Id. at 651, 119 S.Ct. 1661 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). Finally, the Court cautioned that "[p]eer harassment, in particular, is less likely to satisfy these requirements than is teacher-student harassment.” Id. at 653, 119 S.Ct. 1661.

. Davis, 526 U.S. at 678, 119 S.Ct. 1661 (Stevens, J., dissenting).

. Plaintiffs concede that race relations after the fight have improved significantly as a re-suit of Principal Jackson’s intervention.