RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0385P (6th Cir.)
File Name: 00a0385p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

STEVEN VANCE, Minor, by
and through his mother,
Deborah Vance; ALMA
MCGOWEN, Minor, by and
through her mother, Barbara
Erfurth,
     *Plaintiffs-Appellees,*

     *v.*

SPENCER COUNTY PUBLIC
SCHOOL DISTRICT; SPENCER
COUNTY BOARD OF
EDUCATION,
     *Defendants-Appellants.*

No. 99-5095

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
Nos. 96-00449—Thomas B. Russell, District Judge.

Argued: June 20, 2000

Decided and Filed: November 6, 2000

Before: KEITH, DAUGHTREY, and GILMAN, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:** Robert L. Chenoweth, CHENOWETH LAW OFFICE, Frankfort, Kentucky, for Appellants. Oliver H. Barber, Jr., BARBER, BANASZYNSKI & ASSOCIATES, Louisville, Kentucky, for Appellees. **ON BRIEF:** Robert L. Chenoweth, Patricia Todd Bausch, CHENOWETH LAW OFFICE, Frankfort, Kentucky, for Appellants. Jeffery S. Miller, BARBER, BANASZYNSKI & ASSOCIATES, Louisville, Kentucky, for Appellees.

   KEITH, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. GILMAN, J. (pp. 20-21), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

   KEITH, Circuit Judge. This appeal[1] presents questions concerning the nature and extent of circumstantial evidence needed to permit a reasonable inference of gender discrimination by school officials in the student-on-student sexual harassment context. The Spencer County School District ("Spencer")[2] appeals from the district court's denial of its post-trial motion for judgment as a matter of law. A jury found that Spencer violated both Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688,

———————————

   [1]The district court below granted a directed verdict as to named Plaintiff Steven Vance's claims. Mr. Vance has not appealed his claims and is not a party to this appeal.

   [2]The Spencer County Public School District is not a legal entity. By consent, the real Defendant-Appellant in this action was deemed to be Board of Education of Spencer County.

and 42 U.S.C. § 2000d by discriminating against Plaintiff Alma McGowen, a student at one of its schools. For the reasons that follow, this Court **AFFIRMS**.

## I

In November 1992, Alma McGowen enrolled in Spencer as a sixth grader. On the second day of school, some first graders yelled to her, "Oh, there's that German gay girl, that new girl that just moved here." Alma complained to the Spencer School Counselor, Kathy Whitehead. Whitehead spoke to the children Alma identified and gave presentations on accepting people.

During Alma's sixth grade year, while riding the bus, a high school student asked Alma to describe oral sex. Alma reported the incident to both her mother and Whitehead. Whitehead contacted the high school principal, Murrel Lawson. Lawson expelled the student from the bus for a few days. When the student returned, he continued to curse at Alma and was even more vulgar than before.

During the 1993-1994 school year, Alma attended the Spencer County High School ("Spencer High"). While there, another student, who was the school principal's nephew, confronted Alma in the presence of other students and demanded to know if she was gay. When Alma spoke to David Shelburne, the assistant principal at the high school, he said that the boys considered her cute and they were flirting with her, so she should just "be friendly."

During her seventh grade year, students regularly shoved Alma into walls, grabbed her book bag, and stole and destroyed her homework. Alma reported these incidents to Phyllis Jenkins, the academic counselor, who referred her to Father Ryan, the youth advocate. In response, Father Ryan told her he would see what he could do.

In the fall of the 1993-1994 school year, a male student in her gym class called Alma and other female students

"whores" and "motherfuckers," hit them, snapped their bras, and grabbed their butts.  He also went into Alma's bag and began to take things from it.  When Alma tried to get her pen back from him, the boy stabbed her in the hand with the pen. Alma reported the incident to her gym teacher, who sent her to the principal's office.  The office secretary treated Alma's injury.  The principal was informed, but did not get involved at that time.  A few days later, the student told Alma that he had been talked to, but that he did not get into any trouble because he was a school board member's son.

During the Spring semester of her seventh grade year, Alma's mother wrote two letters concerning her daughter. The first letter concerned an incident in her science class. Some students approached Alma during a bathroom break while the teacher was not in the room.  Several of the students called Alma crude names and backed her up against a wall. Two boys held her hands, while other students grabbed her hair and started yanking off her shirt.  When a boy stated he was going to have sex with her and began to take his pants off, another boy intervened and assisted Alma.  Alma did not report the incident to her teacher.  Alma went home and told her mother about the incident.  Alma's mother wrote a letter to the principal, which Alma hand-delivered to the front office the following day.

In response to the letter, the classroom teacher spoke with Alma and five of the boys involved in the incident.  With Alma seated between two of the boys, the teacher told Alma to tell the boys what she thought they had done.  Alma did not know if anything was done to punish the boys.

During the fall of Alma's eighth grade year, 1994-1995, a female special education student struck Alma.  Principal Lawson spoke to the girl.  During that same period, Alma spoke with Kirby Smith, the youth advocate who replaced Father Ryan, about other students harassing her.  Smith asked Alma for a list of the students in order to address the

526 U.S. at 650.  The only difference between the language in *Davis* and the jury instructions at issue was in the definition of the term "deliberate indifference."

Deliberate indifference was essentially defined by the district court as an awareness on the part of the Board that its action or inaction based on its knowledge of the harassment would, with substantial certainty, subject the student to more harm.  Thus, the instructions correctly concentrated on the actions of Spencer and not on the actions of the harassing student.  Indeed, these instructions would have permitted a finding of no liability even if the harassment had continued, so long as Spencer did not act with deliberate indifference. This is not substantially different from the *Davis* formulation that a finding of deliberate indifference is justified "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

The district court's summation of the standard of liability, therefore, was at least substantially accurate. *See Clarksville-Montgomery County Sch. Sys. v. United States Gypsum Co.,* 925 F.2d 993, 1003 (6th Cir. 1991) ("A jury instruction which states the law with substantial accuracy and fairly submits the issues to the jury will not provide grounds for reversal."). Because the instructions showed "no tendency to confuse or mislead the jury with respect to the applicable principles of law," *id.*, I conclude that any error in the district court's definition of deliberate indifference was harmless.  I thus concur in the opinion of my colleagues.

_____

**CONCURRENCE**

_____

RONALD LEE GILMAN, Circuit Judge, concurring. I concur in the result reached by the court, as well as in its conclusions regarding the harassment of Alma McGowen and the knowledge of the Spencer County Public School District. Nevertheless, I write separately because the court does not directly address what I perceive to be Spencer's main complaint with respect to the jury instructions.

According to Spencer, the jury instructions regarding the Board's liability under Title IX did not conform to the law as set forth in *Davis v. Monroe County Bd. Of Educ.,* 526 U.S. 629 (1999). Spencer argues that the jury was led to believe that the Board is strictly liable for student-on-student sexual harassment, regardless of Spencer's remedial actions, if the harassment did not in fact stop. I disagree.

To be fair to the district court, the standard of liability for student-on-student sexual harassment was not articulated by the Supreme Court in *Davis* until after judgment had been entered in the instant case. Nevertheless, the district court's jury instructions anticipated *Davis* by adopting the proper standard for liability as described in *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 292-93 (1998) (requiring that a student who is sexually harassed by a teacher prove both actual notice to and deliberate indifference by a school district for such an entity to be held liable for damages under Title IX).

The instructions required a finding that (1) McGowan was being subjected to a hostile sexual environment, (2) timely notification was given to a Spencer official of this hostile environment, and (3) Spencer exhibited deliberate indifference toward remedying the hostile sexual environment despite its actual knowledge. These are in fact the proper elements to establish liability according to *Davis*. *See Davis*,

situation. Smith spoke with the boys who were on the list that Alma gave him.

Later, one of the boys told Alma in front of a class that he told Smith that he had a crush on her and that he could touch Alma in any way he wanted and no one was going to do anything about it. Afterward, the boy did indeed touch Alma on her chest and butt. He also requested sexual favors several times while the teacher was in the room. Alma testified that nothing was done about these incidents.

In December 1994, Alma spoke with Assistant Principal Shelburne and indicated that the boy, who was a part of the problem in her science class, was still harassing her. A few days later, the boy told Alma that although he had been spoken to, he did not "give a damn about it and he would do whatever he wanted to."

Alma testified that the harassment increased to the point that she was propositioned or touched inappropriately in virtually every class. Alma also testified that the more she complained to the principals, even though they spoke to the students, the harassment seemed to increase and she indicated she grew leery of talking to anyone.

In May 1995, pursuant to the Spencer Harassment Policy, Alma filed a complaint alleging violations of Title IX. The complaint listed detailed instances of sexually harassing conduct. Spencer took no action to address the specific harassment allegations before school started in August 1995. Instead, the Title IX Coordinator allowed Alma to complete the remaining few weeks at home. Alma's complaint was not presented to the Spencer's new Superintendent, who began in July 1995. Additionally, Spencer took the position that it did not have enough information to investigate Alma's specific allegations.

At the beginning of the 1995-1996 school year, Spencer discussed its new sexual harassment policy at the high school. From August 16 through August 31, 1995, Alma attended

school. She testified that groups of students continued to ask for sexual favors, touch her in ways that made her uncomfortable, and hit her with books. During this same time period, Alma attended school sexual harassment presentations. Spencer also provided sexual harassment and discrimination training to all its employees.

Alma was diagnosed with depression. On her last day at the high school, a boy told her he was part of the KKK, as were his family members, and they were going to go to her home and burn it down because all Germans should be burned and sent to hell.

On August 31, 1995, Alma withdrew. In the fall of 1995, the Spencer Board of Education (the "Board") received Alma's complaints. The Board invited her and her mother to meet with them. Upon advice of counsel, neither Alma nor her mother met with the Board.

On July 1, 1996, Alma, by and through her mother, filed her complaint. She alleged that Spencer, as a funding recipient, had subjected her to intentional sexual discrimination as a result of peer conduct in violation of Title IX of the Education Amendments of 1972, 86 Stat. 373, as amended, 20 U.S.C. § 1681 *et seq.*, and the Kentucky Civil Right Act. Alma also alleged that Spencer discriminated against her on the basis of her national origin, by failing to take appropriate action for the alleged hostile environment caused by her peers, who allegedly harassed her at school in violation of 42 U.S.C. § 2000d.

On September 1, 1998, a jury trial commenced. At the close of Plaintiff's proof and again at the conclusion of all of the evidence, the Board moved for summary judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. The trial court denied both motions and submitted the case to the jury. The jury returned its verdict in favor of Alma on all counts and awarded her $220,000.

harassment based upon sex. Although the Supreme Court did not hold that the harassment had to have been of a "sexual nature," the "sexual nature" requirement did not prejudice Defendant.

Second, the jury heard the following evidence: in the fall of 1995, "in virtually every class [Alma] was asked for a blow job, asked for sexual favors, was touched in uncomfortable ways"; Alma was repeatedly hit with books by groups of students; her mother came to school to get her on three different occasions where she had a high fever because she could not tolerate the abuse any longer; and that Alma was diagnosed with depression and withdrew from school. Thus, the jury entertained evidence evincing a bar to Alma's education.

Finally, both Alma and her mother had alerted Spencer on numerous occasions concerning highly inappropriate conduct, including physical assault. However, the jury heard testimony that in response to these incidents, Spencer "spoke" to the offenders. On at least three separate occasions, involving assaultive behavior, Spencer's response, although ineffective, remained exactly the same. Thus, the jury heard evidence confirming Spencer's willingness to repeat ineffective measures time and time again. Having heard this evidence, the jury could have reasonable assumed that Spencer understood that one ineffective response could lead to at least two others.

## V

The district court's order to deny Defendant's Rule 50 motion is affirmed.

create and intimidating, hostile or offensive environment?

(2) Was an appropriate person informed of the hostile environment?

(3) Did the Defendant School District treat the reporting of the hostile environment with deliberate indifference?

In explaining "deliberate indifference," the jury instruction stated:

> "Deliberate Indifference" means more than mere "recklessness" on the part of the appropriate person. "Recklessness" requires only proof that a reasonable person would have appreciated the great degree of risk of harm to the plaintiff. In order for an act to be "deliberate," the particular appropriate person must have been shown to have been aware that adverse consequences from his or her action were certain or substantially certain to cause the harm. Before you can find that any appropriate person was deliberately indifferent, the plaintiff must prove that the appropriate person was aware that a particular act or inaction was certain or substantially certain to cause the Plaintiff harm and that the appropriate person decided to act or not to act in spite of that knowledge.

In the instant case, the questions the jury addressed differ from the standard the Supreme Court announced in *Davis* in the following ways: (1) the Court did not state that the conduct must be of a "sexual nature"; and (2) the Court stated that the conduct must "effectively bar[] the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633. We find that the slight nuances between the *Davis* standard and the jury instructions were neither confusing, misleading, nor prejudicial.

First, in *Davis,* the Supreme Court addressed "gender-oriented conduct." *Id*. at 651. Here, the jury addressed

Spencer appeals the lower court's denial of its Rule 50 motion.[3]

## II

In reviewing a motion for a judgment as a matter of law under Federal Rule of Civil Procedure 50, this Court applies the same standard that the district court uses. *See Hurt v. Coyne Cylinder Co.*, 956 F.2d 1319, 1328 (6th Cir. 1992). The Court will therefore consider "the evidence in a light most favorable to the party against whom the motion is made, giving that party the benefit of all reasonable inferences." *Tuck v. HCA Health Servs., Inc.*, 7 F.3d 465, 469 (6th Cir. 1993). Accordingly, judgment as a matter of law will be proper where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on that issue, or where a claim or defense cannot under the controlling law be maintained or defeated without a favorable finding on that issue. *See* Fed. R. Civ. P. 50(a). "The court should not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury; rather, it must view the evidence in the light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences." *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 583 (6th Cir. 1994) (citing *Agristor Leasing v. A.O. Smith Harvestore Prods., Inc.*, 869 F.2d 264, 268 (6th Cir. 1989)).

---

[3]In the briefs before this Court on appeal, neither Plaintiff nor Defendant have addressed Plaintiff's national origin claim, 42 USC § 2000d, or her Kentucky Civil Rights Act claim. Because the parties have only addressed Plaintiff's Title IX claim on appeal, this Court will only address that claim. *See Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1999) (holding claims that appellant failed to address in brief on appeal from adverse summary judgment were waived) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 403 n. 18 (6th Cir. 1999); *McMurphy v. City of Flushing*, 802 F.2d 191, 198-99 (6th Cir. 1986)).

### III

Alma brings her Title IX claim based on student-on-student sexual harassment. Title IX provides in relevant part:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance. . . .

20 U.S.C. § 1681.

While this action was pending appeal, the Supreme Court decided that recipients of federal funds, like Spencer, may be liable for damages under Title IX for student-on-student sexual harassment. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 653 (1999); *see also Soper v. Hoben*, 195 F.3d 854, 854 (6th Cir. 1999) (applying *Davis* analysis to facts occurring in 1994 and after oral arguments in the case), *cert denied*, 120 S.Ct. 2719 (2000). In the instant action, there is no dispute that Spencer receives federal funding and is therefore liable for Title IX student-on-student sexual harassment. The issue before this Court is whether Plaintiff has satisfied the *prima facie* elements for her claim.

In *Davis*, the Supreme Court established that Title IX may support a claim for student-on-student sexual harassment when the plaintiff can demonstrate the following elements:

(1) the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school,

(2) the funding recipient had actual knowledge of the sexual harassment, and

(3) the funding recipient was deliberately indifferent to the harassment.

the allegations and initiated termination proceedings once they obtained conclusive proof of the relationship. *See id.*

Here, the only evidence before this Court reflecting the Defendant's responses to the stabbing incident, science room incident, and Title IX complaint involves talking to students. At no time did Spencer ever respond, to the degree and kind, as those authorities in *Soper*. Although Title IX does not require certain specific responses, it does require a reasonable response, which Spencer failed to provide.

### IV

In its brief on appeal, Defendant argues that this case was tried and submitted to the jury with an inappropriate standard of liability. For the reasons that follow, we reject Defendant's argument.

"The standard of review for jury instructions is that they are 'reviewed as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision.'" *Innes v. Howell Corp.*, 76 F.3d 702, 713-714 (6th Cir. 1996) (quoting *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72 (6th Cir. 1990)). "The district court "may be reversed only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Innes,* 76 F.3d at 713-714 (quoting *Beard*, 900 F.2d at 72).

According to the Verdict Form, the jury responded to the following elements in the affirmative:

(1)  Was Plaintiff Alma McGowen subjected to an unwelcome hostile sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; and was the harassment complained of based upon sex; and did the alleged sexual harassment have the effect of unreasonably interfering with Plaintiff's education and

In the instant case, Spencer responded to several of Alma's complaints by "talking" to the offenders. However, the harassing conduct not only continued but also increased as a result. In fact, some of Alma's offenders confronted her after they had been "talked" to in order to harass Alma again. As in *Canty*, once Spencer had knowledge that its response was inadequate, it was required to take further reasonable action in light of the circumstances to avoid new liability.

Because of Spencer's deliberate indifference, it is readily distinguishable from *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999). In *Soper*, a male special education student kissed plaintiff, also a special education student, while off school grounds. Plaintiff's mother complained to plaintiff's teacher, who assured her that she would watch the male student. *See id*. at 848. Later, after plaintiff transferred to another school, she told her mother that the same male student had raped her at school, and two other male students had fondled her in the back of the classroom while the teacher was outside in the hallway. *See id*. After plaintiff's mother reported these incidents, school authorities immediately contacted the proper authorities, investigated the incidents themselves, installed windows in the doors of the special education classroom, placed an aide in plaintiff's classroom, offered plaintiff increased supervision and an escort, and created counseling sessions on how to function socially with the opposite sex. *See id*. at 855. In rejecting plaintiff's Title IX claim for sexual harassment, this Court stated "the prompt and thorough response by school officials to the [plaintiff's] complaint was not 'clearly unreasonable in light of the known circumstances.'" *Id*. (quoting *Davis*, 526 U.S. at 648).

A similarly distinguishable case is *Kinman v. Omaha Public School District*, 171 F.3d 607, 610 (8th Cir. 1999). There, the Eighth Circuit rejected plaintiff's Title IX claim, under the deliberate indifference standard, because once the school district had actual knowledge of a sexual relationship between plaintiff and a teacher, it "did not 'turn a blind eye and do nothing.'" *Id*. at 610. Rather, the district investigated

*Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999) (citing *Davis*, 526 U.S. at 633).

As explained below, Alma has presented evidence that satisfies each of these three elements.

### A

Alma has provided evidence evincing sexual harassment consistent with the *Davis* severity and pervasiveness requirement. In *Davis*, a male student fondled a female student's breasts; spoke in vulgar language to her; engaged in sexually suggestive behavior toward her; told her "I want to get into bed with you" and "I want to feel your boobs"; and placed a door stop in his pants and acted in a suggestive manner toward her. 526 U.S. at 633-636. At the end of the string of incidents, the male student pled guilty to sexual battery. *See id*. at 634. As a result of the harassment, plaintiff alleged that her grades had dropped and she had written a suicide note. *See id*. The Supreme Court found that these actions amounted to severe, pervasive, and objectively offensive conduct, particularly given the offensive touching. *See id*. at 653.

In the instant case, as in *Davis*, Alma has submitted abundant evidence of both verbal and physical sexual harassment. Although one incident can satisfy a claim,[4] Alma has presented several instances that reflect not only severity and pervasiveness, but also circumstances that effectively denied her education. On one occasion, Alma was stabbed in the hand. On another, two male students held Alma while others yanked off her shirt, pulled her hair, and attempted to

---

[4] "Within the context of Title IX, a student's claim of hostile environment can arise from a single incident." *Doe v. School Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 62 (D. Me 1999) (citing *Brown v. Hot, Sexy & Safer Productions*, 68 F.3d 525, 541 n. 13 (1st Cir. 1995) (noting that "[w]e do not hold that a one-time episode is not *per se* incapable of sustaining a hostile environment claim")).

disrobe. These physical attacks merely layer the testimony regarding verbal propositioning and name calling. In addition, Alma's Title IX complaint, filed with Spencer in May 1995, curiously warranted her completing her studies at home, but not an investigation. Given the frequency and severity of both the verbal and physical attacks, it is no wonder that Alma was diagnosed with depression. Given this evidence, Alma has satisfied the severity and pervasiveness requirement.

**B**

Alma has satisfied the *Davis* notice requirement. In *Davis*, the Supreme Court suggested that both the parent and student had satisfied the actual notice standard where they had made repeated harassment complaints to the teacher and principal. 526 U.S. at 654; *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998) (stating that the complaint did not state a valid claim under the Title IX because notice of inappropriate comments by a teacher during class was "plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student").

In this case, it is undisputed that Spencer had actual knowledge. Both Alma and her mother made repeated reports to Spencer. Alma informed both her teachers and principals. Alma's mother made repeated reports verbally and in writing, not to mention her Title IX complaint filed with the school. Thus, Alma has satisfied her burden of establishing Spencer's actual knowledge.

**C**

The pivotal issue before us is what is required of federal assistance recipients under the "deliberate indifference standard." The recipient is liable for damages only where the recipient itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to known acts of harassment. *See Davis*, 526 U.S. at 642 (discussing *Gebser*

In the instant case, Spencer failed to respond in light of the known circumstances. On one occasion, a student's harassing conduct culminated in stabbing Alma in the hand. With the exception of talking to the student, there was no evidence before the jury or this Court that Spencer took any other action whatsoever. On another occasion, two male students held Alma while another took off his pants and others pulled her hair and attempted to rip off her clothes. With respect to that incident, the only evidence before the jury evincing Spencer's response is that a class room teacher spoke to the boys and Alma. There is no evidence before this Court that Spencer ever disciplined the offending students nor informed law enforcement as a result of any of these incidents. On yet another occasion, Alma's mother filed a detailed complaint with Spencer's Title IX coordinator. An investigation, however, never resulted. These three incidents alone reflect a deliberate indifference in light of the known circumstances.

Furthermore, in numerous instances, Spencer continued to use the same ineffective methods to no acknowledged avail. Although "talking to the offenders" produced no results, Spencer continued to employ this ineffective method. Such continued ineffectiveness makes this case analogous to *Canty v. Old Rochester Regional School District*, 66 F.Supp.2d 114, 115 (D. Mass 1999). There, a coach in the defendant school district raped plaintiff, a student, on school property. *See id.* at 115. In response, defendant school district issued the coach a reprimand letter. *See id.* Later, the school district issued two more reprimand letters in response to further inappropriate contact between the student and the coach. *See id.* at 116. The court held that it was disingenuous for the defendant district to conclude that written reprimands and restricting the coach from contact with plaintiff were "'timely and reasonable measures to end the harassment.'" *Id.* at 116 (quoting *Wills*, 184 F.3d at 25). The court further reasoned that once the defendant district had knowledge that the reprimand letters were "inadequate," the district was required to "take further steps to avoid new liability." *Id.* at 117.

In *Murrell v. School District No. 1*, 186 F.3d 1238, 1243 (10th Cir. 1999), a male student sexually assaulted plaintiff, a physically impaired special education student, on several occasions. On one occasion, upon discovering the two students, a janitor told them to clean up and returned them to class. Although the teachers allegedly knew about the assault, they did not inform plaintiff's parent. *See id.* at 1244. After another sexual assault, plaintiff's teachers allegedly told her not to tell her mother about the incident and to forget that it happened. *See id.* At no time did the school ever inform law enforcement, investigate, nor discipline the offending student. *See id.* In upholding plaintiff's claim, the Tenth Circuit found defendant school district deliberately indifferent under Title IX. *See id.* at 1248.

In *Wills v. Brown University*, the First Circuit further elaborated the deliberate indifference standard:

> If the institution takes timely and reasonable measures to end the harassment, it is not liable under Title IX for prior harassment. Of course, if it learns that its measures have proved inadequate, it may be required to take further steps to avoid new liability.

184 F.3d 20, 25 (1st Cir. 1999) (internal citations omitted).

In *Doe v. School Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 60-64 (D. Me 1999), the court held that a jury could find that the following amounted to unreasonable responses in light of known circumstances: (1) after various school personnel complained to the principal that a female teacher was having sex with male students, the principal did not investigate nor confront the female teacher with the specific allegations; (2) the principal warned a substitute teacher that she could be sued for slander for telling him that the female teacher was having sex with a male student and made no effort to investigate the matter; and (3) rather than an investigation, the superintendent told the principal to question some of the male students about the allegations.

*v. Lago Vista School Dist.*, stating liability arose from recipient's official decision not to remedy the violation). "[T]he deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." *Davis*, 526 U.S. at 645.

In describing the proof necessary to satisfy the standard, the Supreme Court stated that a plaintiff may demonstrate defendant's deliberate indifference to discrimination "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 648. *Cf. Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (holding that a prison official may be liable under the Eighth Amendment based on deliberate indifference to the safety of prisoners if he knows of, and responds unreasonably to, "a substantial risk of serious harm"); *Gant v. Wallingford Bd of Educ.*, 195 F.3d 134 (2d Cir. 1991) (stating that, under § 1981, a student-on-student racial harassment claim does not require proof that "the defendant fully appreciated the harmful consequences of that discrimination, because deliberate indifference is not the same as action (or inaction) taken 'maliciously or sadistically for the very purpose of causing harm'") (quoting *Farmer*, 511 U.S. at 835 (internal quotation marks omitted)).

The recipient is not required to "remedy" sexual harassment nor ensure that students conform their conduct to certain rules, but rather, "the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Davis*, 526 U.S. at 648-649. The deliberate indifference standard "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." *Id.* at 648. The standard does not mean that recipients must expel every student accused of misconduct. *See id.* Victims do not have a right to particular remedial demands. *See id.* Furthermore, courts should not second guess the disciplinary decisions that school administrators make. *See id.*.

"The Supreme Court has pointedly reminded us, however, that this is 'not a mere "reasonableness" standard' that transforms every school disciplinary decision into a jury question." *Gant*, 195 F.3d at 141 (quoting *Davis*, 526 U.S. at 649). In an appropriate case, there is no reason why courts on motion for a directed verdict could not identify a response as not "clearly unreasonable" as a matter of law. See *Gant*, 195 F.3d at 141.

As an initial matter, Spencer alleges that the intent standard governs Title IX student-on-student claims. Essentially, according to Defendant, as long as a school district does something in response to harassment, it has satisfied the standard. Furthermore, according to Defendant, Spencer did something in response to Alma's allegations. After reviewing the record, the briefs of both parties, and the applicable law, and having had the benefit of oral argument, we reject Defendant's understanding of the deliberate indifference standard.

The standard announced by the Supreme Court is a "clearly unreasonable response in light of the known circumstances." *Davis*, 526 U.S. at 648. If this Court were to accept Spencer's argument, a school district could satisfy its obligation where a student has been raped by merely investigating and absolutely nothing more. Such minimalist response is not within the contemplation of a reasonable response. Although no particular response is required, and although the school district is not required to eradicate all sexual harassment, the school district must respond and must do so reasonably in light of the known circumstances.[5] Thus, where a school

---

[5] In *Davis*, the Supreme Court cited the Department of Education, Office of Civil Rights, Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 62 Fed. Reg. 12034, 12039-12040 (1997) (OCR Title IX Guidelines). *Davis*, 526 U.S. at 647-648. In describing a school district's appropriate response to known sexual harassment, the OCR Title IX Guidelines state:

district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior. Where a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances.

As examples of conduct satisfying the deliberate indifference standard, consider the following cases.

In *Davis*, a male student fondled a female student's breasts; spoke in vulgar language to her; engaged in sexually suggestive behavior toward her; told her "I want to get into bed with you" and "I want to feel your boobs"; and placed a door stop in his pants and acted in a suggestive manner toward her. 526 U.S. at 633-636. In addition, other girls, who the male student harassed, sought an audience with the principal, which a teacher denied. When plaintiff's mother asked the principal what disciplinary action he planned to take against the student, he responded "I guess I'll have to threaten him a little bit harder." *Id.* at 635. Although both plaintiff and her mother informed plaintiff's teacher about the incidents, the school took none of the following action: disciplining the student, separating plaintiff from the student, or establishing a sexual harassment policy or procedure. *Id.* at 634-635. The Supreme Court stated that this lack of response could suggest "deliberate indifference on the part of the Board, which made no effort whatsoever either to investigate or to put an end to the harassment." *Id.* at 654.

---

[I]t should take immediate and appropriate steps to investigate or otherwise determine what occurred and take steps reasonably calculated to end any harassment, eliminate a hostile environment if one has been created, and prevent harassment from occurring again.

OCR Title IX Guidelines, 62 Fed.Reg. at 12042.