John and Mary WILSON, Individually and as Next Friend for Ken Wilson, A Minor,

v.

BEAUMONT INDEPENDENT SCHOOL DISTRICT and Thom Amons.

No. 1:00–CV–0045.

United States District Court, E.D. Texas, Beaumont Division.

May 8, 2001.

Louis Claiborne Dugas, Orange, TX, for Plaintiff.

Melody G Thomas, Gary James Linthicum, Wells Peyton Greenberg & Hunt, Beaumont, TX, for Defendant.

### *MEMORANDUM OPINION*

COBB, District Judge.

This is a sexual harassment case wherein a male middle school student alleges that a male classmate sexually molested him. Ken Wilson (pseudonym) sued Defendants Beaumont Independent School District (BISD) and Principal Thom Amons under several state-law tort theo-

ries and under Title IX, 20 U.S.C. § 1681, which is a federal statute prohibiting sexual harassment by recipients of federal education funding. Defendants filed a motion for summary judgment on all claims. The Court GRANTS Defendants' motion because the summary judgment evidence is insufficient to support a claim under Title IX.

## I. BACKGROUND

Ken Wilson is a mildly retarded twelve-year old. He is enrolled in special education classes at Austin Middle School, which is within the BISD. John Doe (pseudonym) is enrolled in Wilson's class and is also a mentally retarded twelve-year old. Plaintiffs allege that Doe was a disciplinary problem as soon as he began attending Austin Middle School in 1997. The uncontested evidence is that Doe had a problem lying and stealing, that he stole Wilson's lunch money approximately ten times over a one year period, and that he bullied and picked on Wilson repeatedly. Wilson was Doe's primary victim. As a result of this state of affairs, the two boys were assigned separated seats in the classroom and on the school bus.

On one occasion, however, Doe's treatment of Wilson went beyond the general bullying and mischief that had characterized their relationship. On September 7, 1999, an incident occurred when their teacher, Connie Rinando, took the class on a restroom break. A minor disturbance erupted in the hallway where the students were waiting to go into the restroom. After calming the children down, Rinando noticed that Doe and Wilson were missing. As she looked around for them, she saw the restroom door closing. She opened the door and ordered the two boys to exit the restroom. As Doe and Wilson exited, fully clothed, Rinando noticed that Doe had an erection and that Wilson's "eyes were big" with a look of surprise. Plaintiffs allege that when Rinando asked Wilson what had happened, he indicated that Doe had asked to perform oral sex on him and that Doe forced him to have anal sex. Doe denied Wilson's version of the event. Rinando then asked Wilson whether there had been sexual contact. She testified that Wilson said there had been *no* sexual contact. Plaintiffs, however, have presented the testimony of Charles Segura and Gloria Hardin, teachers at BISD, that suggests that Rinando told them that there *had* been sexual contact.

Immediately after the incident, Rinando took the two boys to the office of the Assistant Principal. All evidence suggests that Rinando told the Assistant Principal that there had been *no* sexual contact. About an hour later, the Assistant Principal advised Principal Amons of the incident, but informed him that there had been no sexual contact. The school did not notify the parents. Rinando tried to keep Wilson and Doe separated in and out of class and continued the separated seating policy. Three days later, Wilson told his sister about the alleged sexual contact and she, in turn, reported it to her parents. There were no other incidents of sexual contact or overt harassment involving the two boys.

Once Wilson's mother learned that her son might have been sexually molested, she immediately contacted Child Protective Services (CPS) and Principal Amons. According to Amons and BISD, various "administrative procedures" were then taken, including talking with the students, speaking with CPS, calling the Beaumont Police Department, interviewing employees, getting written statements from employees, holding a meeting with Wilson and his parents, teachers, and administrators, and transferring Doe to a new school. Wilson's mother initially withdrew him

from Austin Middle School, but he has since returned. Based upon the September 7th incident and the alleged initial inaction on the part of Amons and BISD, the Wilson's brought this lawsuit.

## II. DISCUSSION

Plaintiffs' First Amended Complaint alleges the state law causes of action of negligence, negligence per se, gross negligence and malice, and respondeat superior, and a federal cause of action under Title IX. Defendants move for summary judgment on each of these causes of action. They first contend that BISD is immune from tort liability under Texas law. Defendants also argue that as Principal of Austin Middle School, Defendant Amons may not be held liable under a tort theory of liability for a discretionary act done within the scope of his employment. Finally, they assert that Plaintiffs cannot raise a material issue of fact as to several material elements under the Title IX claim.

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure allows a court to grant summary judgment on issues presenting no genuine issue of material fact. Summary judgment is proper when the movant shows that the pleadings, affidavits, and other evidence available to the Court establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion, the burden shifts to the party opposing summary judgment to demonstrate genuine issues of material fact necessitating a trial, using the evidentiary sources set forth in Rule 56(c). *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving

party must offer proof of such quality that "a reasonable jury could return a verdict for the nonmoving party." Anderson *v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court will decide all reasonable doubts and inferences in the light most favorable to the party opposing the motion. *See Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir.1994).

### B. Title IX Liability

Title IX provides, in relevant part, that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ...." 20 U.S.C. § 1681(a). The Supreme Court articulated the standard for Title IX liability in student-on-student sexual harassment cases in *Davis v. Monroe County Board of Education,* 526 U.S. 629, 650, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999):

> [F]unding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

*Id.* The Court also opined that one act of sexual harassment will not support a claim under Title IX. *See id.* at 652–53, 119 S.Ct. 1661. Therefore, to support their claim of student-on-student harassment, Plaintiffs must show that (1) the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive him of access to the educational opportunities or benefits provided by the school, (2) BISD had actual knowledge of the sexual harassment, and (3) BISD was deliberately indifferent to the harassment. *See Soper*

*v. Hoben,* 195 F.3d 845, 854 (6th Cir.1999) (citing *Davis,* 526 U.S. at 633, 119 S.Ct. 1661.).

There is no doubt that the events alleged in this case are tragic. But considering all the summary judgment evidence in the light most favorable to the Wilsons, they have simply not met their burden under Title IX.

### 1. *Deliberate Indifference*

■ Plaintiffs have first failed to show that Defendants were deliberately indifferent. If a defendant does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference "subject[s]" its students to harassment. That is, the deliberate indifference must, at a minimum, "cause [students] to undergo" harassment or "make them liable or vulnerable" to it. *See Davis,* 526 U.S. at 644–45, 119 S.Ct. 1661. This is because, in cases of alleged student-on-student harassment, courts view only deliberate indifference to such harassment as discrimination by school officials themselves. *Id.* The deliberate indifference standard is a high standard that is necessary to "eliminate any risk that the recipient would be liable in damages not for its own official decision" but instead for another's "independent actions." *Id.*

Wilson may demonstrate BISD's deliberate indifference to discrimination "only where [BISD]'s response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 648, 119 S.Ct. 1661. Defendants are not required to "remedy" sexual harassment nor ensure that students conform their conduct to certain rules, but rather, they "must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Id.* at 648–49, 119 S.Ct. 1661. The deliberate indifference standard does not mean that victims have a right to particular remedial demands. *See*

*id.* Finally, the Court must consider these questions in light of the surrounding circumstances.

The Court concludes that BISD and Amon's response was not "clearly unreasonable ... in light of the known circumstances." *Davis,* 526 U.S. at 648, 119 S.Ct. 1661. Assuming for present purposes only that Rinando's actions are fairly attributed to BISD, the federal funding recipient, the Court will not second-guess the school's conduct. *See id.* at 648, 119 S.Ct. 1661 ("courts should refrain from second guessing the disciplinary decisions made by school administrators."). Once Rinando questioned Wilson and Doe, she took them both to the principal's office to report the incident. She then kept Doe separated from the rest of the class by placing him behind a partition in the corner of class. (Rinando Dep. At 56.) After the assistant principal told Rinando to take no further action, she continued the separation policy at all times. *Cf. id.* at 635, 119 S.Ct. 1661 ("Nor ... was any effort made to separate" plaintiff and defendant). Although this remedy in hindsight might appear insufficient, it is clear that some action was taken. All the evidence demonstrates that once Principal Amons became aware of the contact he took significant steps to remedy the situation. He interviewed the students; spoke with CPS and the Beaumont Police Department; interviewed employees, getting written statements from them; held a meeting with Wilson and his parents, teachers, and administrators; and transferred Doe to another school. This further action, moreover, was reasonable and would certainly have prevented further sexual harassment, which is the goal of Title IX. It also differs markedly from the kinds of conduct courts have found to constitute deliberate indifference or to raise a question of fact. *See, e.g., Id.* (where the school board "made no effort

whatsoever either to investigate or to put an end to the harassment" despite the fact that the harassment was reported to classroom teachers, the school principal, and the physical education teacher); *Vance v. Spencer County Public Sch. Dist.*, 231 F.3d 253, 259 (6th Cir.2000) (with exception of talking to offending students there was no evidence the school took any other action); *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1248–49 (10th Cir.1999) (school never informed law enforcement, investigated claims, nor disciplined the offending).

Even assuming, however, that Defendants could have taken swifter and more appropriate action, there is no legal requirement of perfection. *See Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 387–89 (5th Cir.2000) (school board's actions not clearly unreasonable even where those actions proved ineffective); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 456 n. 12 (5th Cir.) (en banc), *cert. denied sub nom. Lankford v. Doe*, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994); *KF's Father v. Marriott*, No. CA 00–0215–C, 2001 WL 228353, *17 (S.D.Ala. Feb.23, 2001) (no Title IX liability where despite separating elementary-age girls after a sexual assault a later sexual incident occurred); *Vaird v. Sch. Dist. of Philadelphia*, No. Civ. A 99–2727, 2000 WL 576441, *2 (E.D.Pa. May 12, 2000) (no Title IX liability where after two sexual assaults by eight year-old against seven year-old school kept children in same reading room and further nonsexual "bothering" occurred). Although Wilson's parents are understandably upset at not being notified by BISD representatives, no reasonable jury could find that Defendants' actions were "clearly unreasonable." Defendants' motion for summary judgment may be granted on this ground alone. *See Davis*, 526 U.S. 648–49, 119 S.Ct. 1661 ("there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law."). But Plaintiffs have also failed to meet the next requirement under Title IX.

### 2. Severity of the Harassment

■ Plaintiffs have failed to show that the sexual harassment was so severe, pervasive, and objectively offensive that it can be said to deprive the victim of access to the educational opportunities or benefits provided by the school. Plaintiffs base their claim on the alleged sexual contact that occurred on September 7, 1999. Although there is summary judgment evidence of prior bullying, teasing, and name-calling, there are no other incidents of *gender-related* harassment alleged in any of Plaintiffs' filings. *See Davis*, 526 U.S. at 651–52, 119 S.Ct. 1661 ("Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender."); *Vance*, 231 F.3d at 264 (noting that Supreme Court addressed "gender-oriented conduct").

Plaintiffs seek to get around the fact that there was only one incident of sexual harassment by arguing that the "continued exposure of a rape victim to the perpetrator on a daily basis without any effort to address the physical and psychological impact which had taken place ... resulted in a new and independent exposure of Ken Wilson to an unchanged and unaddressed hostile environment which denied him the benefits to the educational programs he was entitled to." The first thing to note is that the summary judgment evidence does not support Plaintiffs' contention that Wilson's classroom environment was unchanged and unaddressed. The uncontroverted evidence is that Rinando separated Doe from the rest of the class and maintained that separation until Principal

Amons became aware of the sexual contact and took more substantial steps. Although a separated seating policy already existed, it did not involve Doe being placed behind a partition away from the class.

Plaintiffs also offer no authority for the proposition that a Title IX claim can be based on the exposure of an assault victim to "an unchanged and unaddressed hostile environment." Such a claim might suffice under Title VII. *See E.E.O.C. v. Regency Architectural Metals Corp.*, 896 F.Supp. 260, 269 (D.Conn.1995) (plaintiff presented colorable claim of discrimination by alleging that defendant employer "showed an egregious lack of insight into the psychology of a rape victim" when it assigned the rapist to work near the victim). But Title IX liability is less expansive than Title VII liability. *See Davis*, 526 U.S. at 643, 119 S.Ct. 1661; *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286–87, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). The nature of the harassment alleged by Plaintiffs simply does not rise to the level found to be sufficient in any Title IX case. *See, e.g., Davis*, 526 U.S. at 635, 119 S.Ct. 1661 (female student was victim of repeated acts of sexual harassment over 5–month period; student-perpetrator pled guilty to criminal sexual misconduct; multiple victims existed; plaintiff could show actual knowledge and indifference on part of school board); *Vance*, 231 F.3d at 259 (plaintiff was repeatedly propositioned, groped, threatened, and hit over period of years; was stabbed in the hand, two male students held her while others yanked off her shirt, pulled her hair, and attempted to disrobe her; teachers and principal knew of incidents); *Murrell*, 186 F.3d at 1248–49 (severely disabled female student was repeatedly sexually assaulted; perpetrator made harassing phone calls to her at home; janitor found perpetrator assaulting student, told them to clean up the blood and vomit, returned them to class, and told

their teacher; teachers tied other clothing around her waste to cover up the blood on her clothes; teachers told her not to tell her mother about the incidents and to forget it happened; she was suicidal). Even assuming that Wilson was sexually assaulted the facts of this case do not meet the standard set in *Davis*.

Finally, the Court must consider the level of severity alleged in Plaintiffs' claims in light of all the facts in the case. *See Davis*, 526 U.S. at 651, 119 S.Ct. 1661 ("Whether gender-oriented conduct rises to the level of actionable 'harassment' thus 'depends on a constellation of surrounding circumstances, expectations, and relationships,' including, but not limited to, the ages of the harasser and the victim and the number of individuals involved."). There is no summary judgment evidence that before or after the incident of sexual molestation any other sexual or non-sexual contact occurred between the boys. Plaintiffs fundamentally seek to have the Court impose Title IX liability on the basis of one incident. But as the Supreme Court concluded, for the sexual harassment to be sufficiently severe, the behavior must have the *systematic effect* of denying the victim equal access to an educational program or activity. *Id.* at 652–53, 119 S.Ct. 1661. The Court reasoned:

> Although in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect, *we think it unlikely that Congress would have thought such behavior sufficient to rise to this level* in light of the inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment. By limiting private damages actions to cases having a systematic effect on educational programs or activities, we reconcile the

general principle that Title IX prohibits official indifference to known peer sexual harassment with the practical realities of responding to student behavior, realities that Congress could not have meant to be ignored.

*Id.* (emphasis added). Therefore, the single instance of unarguably severe one-on-one harassment alleged by Plaintiff was not so severe, pervasive, and objectively offensive that it can be said to have deprived Wilson of access to the educational opportunities or benefits provided by the school.

The Court concludes that a reasonable jury could not find that BISD and Principal Amons were deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school. Because BISD and Principal Amons took reasonable steps to remedy the harassment, Defendants' Motion for Summary Judgment on Plaintiffs' Title IX claim is granted.

### C.  State Law Claims

■   Plaintiffs also allege the state law causes of action of negligence, negligence per se, gross negligence and malice, and respondeat superior. It is doubtful that Plaintiffs could succeed in their claims against BISD. *See* Tex. Civ. Prac. & Rem. Code § 101 .051 ("Except as to motor vehicles, [the Tort Claims Act] does not apply to a school district or to a junior college district."); *Barr v. Bernhard,* 562 S.W.2d 844, 846 (Tex.1978) ("The law is well settled in [Texas] that an independent school district is an agency of the state and, while exercising governmental functions, is not answerable for its negligence in a suit sounding in tort."). The same goes for their claims against Principal Amons. *See Barr,* 562 S.W.2d at 849 (with exceptions

not relevant here, professional school employees are not personally liable for acts done within the scope of employment, and which involve the exercise of judgment or discretion). Nevertheless, because the Court's jurisdiction was based on the federal civil rights claim that has now been dismissed, in accordance with this circuit's general rule, the Court dismisses the remaining state law claims. *See Parker & Parsley Petroleum v. Dresser Indus.,* 972 F.2d 580, 585 (5th Cir.1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."). Plaintiffs are free to bring those claims in Texas state court.

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment on Plaintiffs' Title IX claim is GRANTED. The Court declines to exercise supplemental jurisdiction over the state law claims and DISMISSES them under 28 U.S.C. § 1367(c) without prejudice.